UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Sugeira Nieves-Ayala, on her own behalf and on behalf of her minor child, N.M.O.N.<br><br>    Plaintiff<br><br>v.<br><br>[1] Commonwealth of Puerto Rico<br><br>[2] Transporte Sonnell LLC<br><br>    Defendant | **CIVIL ACTION** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.  This is a civil rights action by plaintiff Sugeira Nieves-Ayala, on her own behalf and on behalf of her minor child, N.M.O ("Plaintiff") for discriminatory barriers, policies and practices of Co-Defendant Commonwealth of Puerto Rico at N.M.O.N's school, actionable under the Americans with Disabilities Act (ADA) of 1990. Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against Co-Defendant Commonwealth of Puerto Rico (hereinafter, "Commonwealth"). There is no claim for commentary damages under state or federal law against Co-Defendant Commonwealth of Puerto Rico.

2.  This is also a civil rights action for discriminatory policies and practices of Co-Defendant Transporte Sonnell LLC, a provider of after school transportation services at Plaintiff's school, actionable under the ADA of 1990. These discriminatory policies and practices of

Co-Defendant Transporte Sonnell LLC also resulted in a personal injury to Plaintiff, actionable under Puerto Rico's general tort statute

## JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims. Plaintiff also invokes supplemental and diversity jurisdiction for Plaintiff's claims under Article 1802 of the Puerto Rico Civil Code.

4.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.   All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

6.   Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

7.   Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable United States laws, and a member of the public whose rights are protected by these laws.

## FACTS

8.   Plaintiff's elementary school is in Rexville, Bayamon, Puerto Rico. The name of the school is: *Escuela Rexville Elemental* (hereinafter, "school"). The school is owned and/or operated by Co-Defendant Commonwealth (see images below).











9.      Co-Defendant Sonnell is a provider of after school transportation services at N.M.O's

elementary school.

10.   Plaintiff is aware of barriers (both physical and intangible) at her school that interfere with Plaintiff's ability to use and enjoy the services and privileges offered at the school.

11.   Plaintiff is being subjected to disability-based discrimination and she is unable to participate equally to all others at the school as a result of the following specific discriminatory barriers.

   a.   There is a space adjacent to the curb reserved for the exclusive use of vehicles during the loading or unloading of passengers (not parking), such as students that exit their parent's vehicle in the morning. This space is a passenger loading zone. However, while others are able to enjoy the passenger loading zone, Plaintiff is not. The passenger loading zone is not accessible passenger because is in violation of the following tangible barriers to access:

      a)   vehicle pull-up spaces requirements (not at least 96" wide and at least 20" long") in violation of Section 503.2 of the ADAAG);

      b)   access aisles requirements (marked access aisle next to, and at the same level as, the vehicle pull-up, that is at least 60" wide, adjoin an accessible route, and without overlapping with vehicular ways) in violation of Section 503.3 of the ADAAG.

      c)   Surface requirements in violation of Section 503.4 and Section 302 (change in level steeper than 1:48).

   b.   The <u>slope of the ramp</u> is inadequate (see also image above). Slope represents the proportion of vertical rise to horizontal length and is specified in the Standards as a ratio (e.g., 1:12). It also can be expressed as a percentage, pitch, or in degrees. The running slope is to be uniform along a run. Here, the running slope of the

5

ramp is far in excess of 1:12 and the cross slope is exceeds 1:48 in violation of Sections 405.2 and 405.3 of the ADAAG. See image below. This is a tangible barrier to access.



c. Inadequate clear width of ramp. The clear width is less than 36 inches in violation of Sections 405.5 of the ADAAG. Ramp runs must have a clear width of 36 inches minimum (measured between handrails). See image below. This is a tangible barrier to access.



d. Inadequate landing of ramp. Level landings are required at the top and bottom of each run. Here, the changes in level are greater than 1:48 at landings in violation

6

of Sections 405.7 of the ADAAG. Landings must be designed to prevent the accumulation of water. See image below. This is a tangible barrier to access.



e.  The following *intangible* barriers to access:

a)  Inadequate procedures and practices for loading and unloading passengers. Co-Defendant Commonwealth and Co-Defendant Sonnell do not have general written policies for loading, transporting, and unloading passengers-students with disabilities. Therefore, every agent or employee of the Defendants assists (or does not assist) in the loading, transporting, and unloading of passengers-students with disabilities according their own criteria, not uniform guidelines tailored to the special needs of passengers-students with disabilities in general. For example, because there and no formal procedures (or alternatively there are inadequate procedures), Defendants failed to provide and fasten a seat belt (or functional equivalent) to safety transport Plaintiff. Defendant's failed to properly fasten Plaintiff when transporting her on

September 15, 2016 and as a result, she fell from her wheelchair and suffered a personal injury. The foregoing is only an example of the real, concrete, and particularized consequences (and future potential consequences) of Defendant's failure to follow procedures.

b) Co-Defendant Commonwealth of Puerto Rico does not have formal requirements to its independent contractors for the loading, transporting, and unloading of student-passengers with disabilities. Co-Defendant Commonwealth of Puerto Rico delegates its duty to ensure full and equal access in the loading, transporting, and unloading of passengers-students with disabilities to independent contractors.   Co-Defendant Commonwealth of Puerto Rico does not require its independent contractors to establish or follow reasonable procedures to prevent disability-based discrimination in the loading, transporting, and unloading of passengers-students with disabilities. In the alternative, Co-Defendant Commonwealth of Puerto Rico do not have policies and procedures to supervise or verify whether in fact its independent contractors are adequately following established procedures (if any) in the loading, transporting, and unloading of student-passengers with disabilities. Co-Defendant Commonwealth of Puerto Rico only requires its independent contractors to obtain and maintain an insurance for transportation-related liability.

c) Co-Defendant Sonell does not have formal requirements to its employees for the loading, transporting, and unloading of student-

passengers with disabilities. Co-Defendant Sonell delegates its duty to its employees without providing any special training concerning the the loading, transporting, and unloading of student-passengers with disabilities. Co-Defendant Sonnell failed to require Co-Defendant Commonwealth of Puerto Rico to establish or parameters to prevent disability-based discrimination in the loading, transporting, and unloading of passengers-students with disabilities, or personal injuries, as here. In the alternative, Co-Defendant Sonell does not adequately follows, supervised or enforce established procedures (if any) for the loading, transporting, and unloading of student-passengers with disabilities. Co-Defendant Sonell simply maintains an insurance for transportation-related liability.

12.    Plaintiff was, and continues to be, deterred from visiting the her school and using its transportation system because Plaintiff knows that the school's services, facilities, privileges, advantages, and accommodations were and are unavailable or limited to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the school. What is more, Plaintiff *needs* to attend her school, she does not have the option to return to the school once the tangible and intangible barriers are removed. Here, Plaintiff will continue to attend her school on a regular basis and will necessarily encounter barriers to access.

13.    Defendants knew, or should have known, that these elements and areas of the school and related transportation services were inaccessible, violate federal law, and interfere with

(or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the school and related transportation services (without much difficulty or expense), and make the school and related transportation services accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the school and related transportation services to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design, as well as establishing and maintaining reasonable procedures for the loading, transporting and unloading of passengers-students with disabilities, such as Plaintiff. Defendants have not removed such impediments and have not modified the school and related transportation services to conform to accessibility standards. Defendants have **intentionally** maintained the school and related transportation services in its current condition and have intentionally refrained from altering the school and its transportation services so that it complies with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the school is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the school; conscientious decision to maintain the architectural layout (as it currently exists) at the school; decision not to remove barriers from the school; allowance that Defendants' property continues to exist in its non-compliance state, and failure to remove

intangible barriers to access by establishing and maintaining policies for the loading, transporting, and unloading of student-passengers with disabilities. Plaintiff further alleges, on information and belief, that the school is not in the midst of a remodel, and that the barriers present at the school are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## CAUSE OF ACTION I
### Americans with Disabilities Act of 1990
### Denial of "Full and Equal" Enjoyment and Use

16.    Plaintiff incorporates the allegations contained in paragraphs 1 through 14.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.  Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.  In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.  Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.  The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.  Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

<u>Failure to Make an Altered Facility Accessible</u>

26.  Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.  The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

**PRAYER FOR RELIEF – COUNT I**

**WHEREFORE**, Plaintiff prays for:

A.  A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B. A permanent injunction pursuant to 42 U.S.C. §§ 12131–12165 and 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C. Payment of costs of suit;

D. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. §§ 12131–12165 and 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E. The provision of whatever other relief the Court deems just, equitable and appropriate.

**CAUSE OF ACTION II**
**Puerto General Tort Statute:**
**ART. 1802 – Puerto Rico Civil Code**

32. Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above with the same force and effect as if herein set forth.

33. On or about September 15, 2016, Co-Defendant Sonell was operating a certain motor vehicle, to-wit: a purportedly accessible vehicle (hereinafter, "the vehicle"), which an agent of Co-Defendant Sonnell was driving in within the Municipality of Bayamon, Puerto Rico.

34.     At said time and place, an agent or employee of Co-Defendant Sonell was the operator or permissive driver of the vehicle.

35.     At this time and place, it became and was the duty of the Co-Defendant Sonnell to exercise due care and caution in the operation of the motor vehicle having due regard for the traffic and use of the roadway and take reasonable measures to ensure the safety of its passengers.

36.      At this time and place, the Plaintiff was a student-passenger that respected all instructions receives and exercised due care and caution as a passenger.

37.     At this time and place, the Co-Defendant Sonnell and its agents, failed to take simple steps to ensure the safety of the students-passengers such as fastening seat belts, and was driving with due care and caution, along and upon the roadway.

38.     At this time and place, a driver of Co-Defendant Sonell negligently drove the purportedly accessible vehicle, thereby and causing Plaintiff to violently fall from her wheelchair.

39.     The Co-Defendant Sonell was then and there guilty of one or more of the following negligent acts or omissions:

    a.  Negligently transported Plaintiff without a seat belt of functional equivalent for her wheelchair.

    b.  Negligently and carelessly operated his motor vehicle without due regard for other vehicles rightfully and lawfully along the way;

    c.  Negligently and carelessly operated his motor vehicle at a high and dangerous rate of speed;

    d. Negligently and carelessly operated his motor vehicle without sufficient control for conditions prevailing along said street;

    e. Failed to stop his motor vehicle in time where he had ample time and opportunity to do so;

    f. Negligently drove his motor vehicle without sufficient brakes; or in the alternative, if such brakes were adequate, negligently failed to apply such brakes so as to control the speed of her vehicle and to avoid the aforesaid collision;

    g. Drove his motor vehicle too fast and in such a manner that operation became dangerous, for the prevailing weather and road conditions;

    h. Drove his motor vehicle in disregard of the prevailing road, weather and traffic conditions, so as to constitute a driving hazard;

    i. Negligently deviated from his own lane of travel and into others lane of travel, in violation of Puerto Rico traffic laws and,

    j. Failed to keep a proper lookout for other vehicles along the roadway;

40.   After the incident, an employee of Co-Defendant Sonell admitted to Plaintiff's mother that Plaintiff had no seatbelt and was not fastened to her wheelchair.

41.   As a direct and proximate result of one or more of these aforesaid negligent acts or omissions, Plaintiff violently collided with parts and floor of the vehicle causing the Plaintiff great and severe personal injuries. These injuries caused the Plaintiff to experience great pain and suffering required medical treatment at New Visions Medical Diagnostics, Inc.

42.     The minor N.M.O.N sustained the loss of her enjoyment of a normal life as a result of her own injuries caused by Co-Defendant Sonnell.

43.     Sugeira Nieves-Ayala sustained the loss of her enjoyment of a normal life as a result of the suffering and pain of her daughter. There injuries caused Sugeira Nieves-Ayala caused to expend considerable time with her daughter, as she must, when N.M.O.N was in need of the compassionate and loving support of her mother. N.M.O.N. injuries severely impaired Sugeira Nieves-Ayala enjoyment of a normal life.

44.     The Plaintiff invoke the doctrine of pendant jurisdiction as well as diversity jurisdiction.

45.     The Plaintiffs request a trial by jury on all issues triable by jury.

   **WHEREFORE**, Plaintiff pray for damages against the Co-Defendant Sonell in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of this action, attorney fees, and any other such other relief to be deemed just and equitable.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiff*
